IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Fadhil A. Hussein, M.D., et al.,            Case No. 3:07CV1715

    Plaintiffs,

v.                                          ORDER

City of Perrysburg, et al.,

    Defendants.

**Background**

This is a civil rights suit under 42 U.S.C. § 1983 for a violation of plaintiffs' constitutional rights. Plaintiffs, Iraq nationals, are a husband and wife. They sue the City of Perrysburg (City) and three of its officials, claiming selective or vindictive enforcement of the law, denial of equal protection of the laws under the Fourteenth Amendment, and retaliation following exercise of their First Amendment rights.

This court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343.

Pending is defendants' motion to dismiss. [Doc. 14]. For the reasons that follow, the motion shall be granted in part and denied in part.

**Discussion**

Fadhil Hussein, M.D., and his wife, Raya Ahmed, purchased two lots from Hafner & Shugarman Enterprises (Hafner), a real estate developer and contractor. They entered into a contract for Hafner to build a new home. Construction began in July, 2004.

Hafner obtained neither necessary building permits from the City nor the other municipal and

state authorizations required to build the home. Plaintiffs allege that the City knew Hafner had not complied with the laws and regulations, but let the work progress nonetheless.

Plaintiffs' property is, in part, on a flood plain. Again without obtaining the necessary permits, Hafner altered a ditch and otherwise disturbed the watercourse on the flood plain. This led to complaints by neighboring homeowners about flooding resulting from Hafner's work. Plaintiffs also allege the City knew Hafner failed to obtain authorization to do work in the flood plain, yet allowed Hafner to proceed.

At some point prior to July, 2006, the City issued a stop-work order. In July, 2006, the neighboring property owners objected to lifting of the stop-work order and urged the City not to issue an occupancy permit. The neighbors sought to keep plaintiffs from occupancy until Hafner and the plaintiffs remediated the flood plain and had, as well, constructed a suitable entrance and public sidewalks.

In October, 2006, plaintiffs, through a consultant-contractor, received approval from a City employee to place a temporary layer of asphalt on their drive so that they could safely enter and leave during the winter. In early November, a paving contractor laid the asphalt. Neighbors, learning of this development, complained to defendant Rick Thielen, City Planning, Zoning, and Economic Development Administrator. Police arrived shortly thereafter and instructed the contractor to tear up the paving as violative of the stop-work order.

Thereafter, Hussein complained to defendant John Alexander, City Administrator. Alexander was unresponsive to his complaints. Hussein then sought to meet with the Mayor. While waiting in the reception area of the Mayor's office, defendant Roud Klag, City Inspector, appeared and commented to another individual that the good doctor had come in "flapping his jaw." The Mayor's

2

receptionist said that plaintiff would not be able to look up from the floor.

On January 10, 2007, Alexander sent Hussein a letter stating that he had interviewed Klag, and Klag could not remember making that statement. According to the letter, if the remark was made, it was not directed at Hussein. This provoked an voicemail message to Alexander from Hussein, in which plaintiff stated that Alexander was lying and was a racist.

Two days later, the City Law Director sent a letter to plaintiffs' counsel and Hafner's counsel stating that work on the flood plain violated a Perrysburg ordinance. The letter also stated that the City had issued a stop-work order and would not issue the certificate of occupancy until plaintiffs resolved entrance-way issues. The letter stated that if the parties were able to remediate the situation to the satisfaction of the City before May 15, 2007, the City would not take enforcement action against either the developer or the owner.

This created a dilemma; to remediate the flood plain damage Hafner had to bring heavy equipment on plaintiffs' property. In April, 2007, Hafner proposed that, if plaintiffs would allow it to bring heavy equipment across their property, it would complete the sidewalk and entrance.

Plaintiffs initially refused to give permission unless Hafner fixed the entranceway first. An agreement between plaintiffs, Hafner, and the City broke the impasse. Plaintiffs gave Hafner permission to do the flood plain work first, but insisted that if the sidewalk and entranceway were not fully completed by May 15, the City would take enforcement action against Hafner.

Hafner completed the flood plain work during April, and the City issued a certificate of occupancy. Hafner did not fix the sidewalk and entranceway. The City granted Hafner an extension until May 31, 2007. Hafner did not complete the work by that deadline. The City never instituted enforcement proceedings.

Plaintiffs claim: 1) the City's failure to enforce its ordinances against Hafner (by letting it proceed without the permits) while enforcing them against plaintiffs (i.e., by having the newly laid asphalt torn up) constitutes a denial of equal protection on the basis of their national origin, ethnicity, and religion and selective enforcement of the laws; and 2) the letter from the City Law Director and threats of instituting enforcement actions after Hussein's complaints to the Mayor constituted retaliation for his exercise of his First Amendment rights.

**Standard of Review**

Defendants move to dismiss plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6). The Supreme Court recently held that a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, U.S. , 127 S. Ct. 1955, 1974 (2007).

The focus is not on whether a plaintiff will ultimately prevail, but rather on whether the claimant has offered "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (citation omitted). Dismissal is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and, in the context of a civil rights claim, "pleadings are to be liberally construed and the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," *In re Cincinnati Radiation Litigation*, 874 F. Supp. 796, 830 (S.D. Ohio 1995).

Defendants attach five exhibits to their motion to dismiss, including the original complaint

4

filed in the Wood County Court of Common Pleas; Alexander's January 10, 2007 letter to Hussein; a transcription of the January 10, 2007 voice mail recording; and codified ordinances of the City.

The Sixth Circuit has held that

> when a document is referred to in the complaint and is central to the plaintiff's claim . . . the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment.

*Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999) (citation omitted); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Further, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

I decline to convert the motion to dismiss to one for summary judgment and, to the extent that the substance and content of these documents are central to plaintiffs' claims, will consider the documents when ruling on the motion to dismiss.

**Discussion**

To state a *prima facie* case under 42. U.S.C. § 1983, a plaintiff must show that the conduct: 1) was committed by a person acting under color of state law; and 2) deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1984).

In their complaint, plaintiffs allege City Administrator Alexander, City Inspector Klag, and City Planning Administrator Thielen, are state actors, and that the actions of the City and its officials constituted unequal, selective or vindictive enforcement of the laws, thereby denying plaintiffs'

equal protection of the laws, and were in retaliation for exercising their First Amendment rights.

### 1. Claims Against City of Perrysburg and Defendants in Their Official Capacity

A § 1983 suit against an municipal employee in his official capacity is the equivalent of a suit against the governmental entity. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68 (1989)). Local governments can be sued under 42 U.S.C. § 1983, *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 690 (1978), but a court cannot hold a municipality liable for an employee's constitutional violations simply under a theory of *respondeat superior*, *id.* at 691.

To impose liability on a municipality under § 1983, the plaintiff must establish an officially executed policy, or the tolerance of a custom, caused or resulting in deprivation of a constitutionally protected right. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-23 (1992). Moreover, a plaintiff must show that the policy or custom is the "moving force" behind the constitutional violation, *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citing *Monell*, *supra*, 436 U.S. at 694), and an "affirmative link between the policy and the particular constitutional violation alleged." *Bennett v. City of Eastpointe*, 410 F.3d 810, 819 (6th Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)); *see also Board of County Commrs. of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (plaintiff must demonstrate a direct causal link between the municipal action and a deprivation of federal rights); *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (in the Sixth Circuit, plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy" (citation omitted)).

A single decision by a decision maker with final authority in the relevant area may constitute

a "policy" attributable to the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). However, the municipality is liable for an official's unconstitutional action only when the official has final authority to establish municipal policy with respect to the action. *Id.* at 481. Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

The City argues that the claims brought against the City must fail because plaintiffs have not set forth the necessary allegations for municipal liability in their complaint, and have not shown any evidence of an unconstitutional policy or custom. Plaintiffs contend that the City had established policies regarding home construction and flood plains, and that plaintiffs' sufficiently alleged municipal liability based on these policies. Plaintiffs add that defendants' wrongful acts implemented municipal policy or custom and, in making the decision that led to the violation of the plaintiffs' rights, the individual defendants had policy-making authority.

There is no allegation in the complaint that there was an express City policy to discriminate against persons of plaintiffs' origin and ethnicity, or that the officers were implementing such policy. There is also no allegation the City tolerated a widespread practice, or custom, of discrimination so common it had the effect of a written policy.

Further, plaintiffs' identification of the home construction and flood plain policies as the "moving force" causing the constitutional violation is not persuasive. Plaintiffs' complaint does not demonstrate an affirmative link between the run-of-the-mill home construction and flood plain policies and the constitutional violations they allege.

As for the defendants' actions constituting a "policy" attributable to the municipality, there

7

is no allegation in the complaint that any of the officials was a policy-maker. Although plaintiffs refer to the defendants as "municipal actors with policy-making authority" in their memorandum in opposition to the motion to dismiss, it does not appear that Alexander, Klag, or Theilen had final authority to establish municipal policy, they acted independent of constraints imposed by the official policies of superior officials, or their decisions were final and unreviewable. In sum, there is no evidence that defendants were policy-makers.

Plaintiffs have not adequately alleged involvement by the City at the policy-making level to demonstrate *Monell* liability. Accordingly, plaintiffs'§ 1983 claim against the City will be dismissed for failure to state a claim upon which relief can be granted.

## 2. Claims Against Defendants as Individuals

### A. Equal Protection[1]

The Equal Protection Clause provides no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. A state cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally, without a rational basis for doing so, treat one differently from others who are similarly situated. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). "The basis of any equal protection claim is that the [government]

---

[1] Alternatively, in their opposition to defendants' motion to dismiss, plaintiffs argue that they sufficiently allege a claim under a "class of one" theory.

Supreme Court cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiffs' do not explicitly plead a "class of one" cause of action in their complaint. As they allege membership in a protected class, they can appropriately be considered under traditional equal protection analysis. Accordingly, I will not address their "class of one" theory.

has treated similarly situated individuals differently." *Silver v. Franklin Tp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).

Plaintiffs generally allege that individual defendants acted under authority and color of state law to deprive them of their Fourteenth Amendment right to equal protection based on their ethnicity, national origin, ancestry and religion.

In making an equal protection challenge, plaintiffs bear the initial burden of demonstrating that a discrimination of some substance has occurred against them which has not occurred against others similarly situated. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Generally, when assessing whether parties are "similarly situated," a court must examine "all relevant factors" including whether the parties were subjected to the same standards. *See United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) (citing *Ah Sin v. Wittman*, 198 U.S. 500, 507-08 (1905)).

Defendants argue that plaintiffs' make no allegations to support an equal protection claim because the complaint does not allege that plaintiffs were treated differently than other "similarly situated" homeowners, i.e., plaintiffs do not allege other homeowners of different religion, race, or national origin who have been treated more favorably. Defendants continue that plaintiffs do not allege an impermissible basis for treating homeowners or construction contractors differently.

Plaintiffs allege that the defendants singled them out because of their Iraqi identity, treating them and Hafner (presumably owned and operated by non-Iraqis) differently with regard to enforcement of the City's ordinances relating to construction. The City allowed Hafner to build the house and disrupt the flood plain without the necessary permits, and without taking any action to impede Hafner's work. The City responded immediately, however, when plaintiffs laid asphalt for

9

his entranceway, as in violation of the stop-work order, although plaintiffs' agent had received informal, but still official permission for the paving.

Plaintiffs contend that they have sufficiently pleaded their equal protection claim because they allege that they were treated differently than Hafner and any other landowner or developer. Plaintiffs compare their situation with that of Hafner, and contend in their memorandum in opposition to defendants' motion to dismiss that a landowner or developer would be similarly situated to plaintiffs if he owns property and built a home in the City or sought to alter a flood plan.

A critical issue here is what degree of similarity is required for two parties to be considered "similarly situated." Too narrow a definition of "similarly situated" could exclude from the zone of equal protection those whom defendants treated disparately without a rational basis; conversely, too broad a definition could sweep in undeserving cases.

Defendants assert that plaintiffs have not identified comparables, i.e., other property owners in Perryburg, who they treated differently. Indeed, viewed only as a developer/contractor, Hafner is not similarly situated to plaintiffs. However, examining all relevant factors and mindful that too narrow a definition of "similarly situated" may leave deserving parties without a remedy, I conclude that plaintiffs have alleged facts arguably supporting a claim for relief.

Hafner owned multiple lots in the subdivision, and was the developer of plaintiffs' two lots from 2004 until 2006. Plaintiffs allege the City was aware that Hafner was not in compliance with the law, but nevertheless allowed it to work undisturbed, and without permits, for years. The City was far from similarly tolerant when plaintiffs, after being given the go-ahead, had their entranceway paved.

Most simply put: the City let Hafner work without authorization; when the plaintiffs worked

with its approval (albeit informally communicated) to pave their driveway, it stopped the work and had it torn out. Thus considered, Hafner's situation is comparable and the City treated plaintiffs differently.

In addition to treating comparable parties differently, defendants must have done so for an unlawful reason. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Charles v. Baesler*, 910 F.2d 1349, 1356-57 (6th Cir. 1990). Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (internal citation omitted).

Although equal protection claims must be alleged with sufficient specificity to avoid being conclusory, plaintiffs need not meet a heightened pleading requirement. *See*, *e.g., Crawford-El v. Britton*, 523 U.S. 574, 595 (1998). The City may have some explanation other than plaintiffs' status of Iraqi Muslims for its disparate actions. But that's not the issue at this stage. Plaintiffs' factual allegations present colorable claims for redress for distinct constitutional deprivations. That suffices for now. *See Olech*, *supra*, 528 U.S. at 565 (allegation that defendant's actions were "irrational and wholly arbitrary" was sufficient to state a claim for relief under traditional equal protection analysis); *Zahra v. Town of Southold*, 48 F.3d 674, 684 n.5 (2d Cir. 1995) (the following allegation was sufficient to state an equal protection claim: "The acts of all individual defendants as alleged herein were made intentionally or in reckless disregard of [plaintiff]'s rights, were made in bad faith and constitute a pattern of discrimination against [plaintiff]").

The purpose of the Equal Protection clause is to secure individuals against intentional and

arbitrary application of the law. Upon review of plaintiffs' complaint, I find that, when accepting the factual allegations as true and construing all reasonable inferences in plaintiffs' favor, plaintiffs state an equal protection claim upon which relief can be granted. *See Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

### B. Selective Enforcement

"Sometimes the enforcement of an otherwise valid law can be a means of violating constitutional rights by invidious discrimination. To address this problem, courts have developed the doctrine of selective enforcement." *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir. 1996). The requirements for a selective enforcement claim "draw on ordinary equal protection standards." *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *see also Gardenshire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000); *Futernick*, *supra*, 78 F.3d at 1056. An equal protection analysis based on a theory of selective enforcement generally is framed in terms of protected-class discrimination; often, a claim will arise as a defense to criminal charges or, as in this case, to regulatory enforcement actions. *Futernick*, *supra*, 78 F.3d at 1056.

The Sixth Circuit standard for a selective enforcement claim is that a plaintiff must prove "the challenged law enforcement practice 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002) (citation omitted); *see also Harajli v. Huron Township*, 365 F.3d 501, 508 (6th Cir. 2004). To establish discriminatory effect, plaintiffs "must demonstrate that similarly situated individuals of different race were not treated in similar manner." *Jacobs v. Village of Ottawa Hills*, 111 F.Supp.2d 904, 916 (N.D. Ohio 2000) (Carr, J.).

The second element, a discriminatory purpose, requires plaintiffs to allege facts sufficient

to show that any unequal treatment by defendants was intentional or purposeful, and sought to discriminate against plaintiffs. To establish discriminatory purpose plaintiffs must show the disparate treatment was motivated by animus towards Muslims and Iraqi nationals. *See U.S. v. Jones*, 399 F.3d 640, 645 (2005).

Plaintiffs assertions are not mere conclusory allegations. They allege a discriminatory effect, and they provide the City knew of Hafner's failure to obtain proper permits. The City's awareness and failure to enact enforcement proceedings against Hafner, and prompt enforcement of the stop-work order against plaintiffs, may manifest discriminatory purpose and, as a result, selective enforcement. The complaint asserts facts supportive of a selective enforcement claim. Accordingly, defendants motion shall be denied as to this cause of action.

### ii. John Alexander, City Administrator

Supervisory liability under § 1983 is not based on *respondeat superior*. *See Monell*, *supra*, 436 U.S. at 691. However, this does not automatically mean that a supervisor can never incur liability for civil rights violations. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Liability of supervisors under § 1983 cannot "be based solely on the right to control employees, or 'simple awareness of employees' misconduct'". *McQueen v. Beecher Community Schools*, 433 F.3d 460, 470 (6th Cir. 2006) (internal citations omitted). To be held liable, a supervisor must have "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct [in question]." *Hays v. Jefferson County, Kentucky*, 668 F.2d 869, 874 (6th Cir. 1982). Furthermore, supervisor's failure to supervise or control and individual is not actionable "unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Hays*, *supra*,

13

at 874).

Plaintiffs plead that defendants permitted Hafner to proceed developing lots without being in compliance with the laws and ordinances, but responded quickly to complaints once plaintiffs took possession of their residence. They claim that defendants took action only against plaintiffs and not Hafner.

Alexander supervises Thielen, who, in turn, supervises Klag. Plaintiffs attempt to hold Alexander liable for allowing Hafner to develop the subdivision for years without being in compliance with regulations, treating plaintiffs differently when they took possession of their residence, and not taking enforcement action against Hafner after failing to meet the May 30, 2007, deadline. They suggest that Alexander was aware of and personally involved in the actions giving rise to this complaint, and that he concurred in and ratified them.

I conclude that plaintiffs' complaint alleges an insufficient nexus between plaintiffs' claims of animus and Alexander, and, as well, with regard to his role in permitting Hafner to keep working without authority, but stopping the plaintiffs when they put in their driveway.

### iii. Rick Thielen, City Planning Administrator and Roud Klag, City Inspector

Tierney and Klag, as City Planning Administrator and City Inspector, appear to have been involved in the alleged disparate treatment, i.e. allowing Hafner to develop, treating plaintiffs differently, and not taking enforcement action against Hafner in May, 2007. Moreover, plaintiffs allege Thielen, through his directive to the police, caused the contractor to tear up the temporary driveway.

As to the claims against these two individuals, when I apply the plaintiff-favorable standard of viewing the allegations most favorably toward them, there is enough to permit the case to go

14

forward.

### B. First Amendment Retaliation

Plaintiffs also assert a claim for retaliation. The Sixth Circuit has held that "adverse state action 'motivated at least in part as a response to the exercise of [a] plaintiff's constitutional rights' presents an actionable claim of retaliation." *McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 520 (6th Cir. 2001) (citation omitted). The basic elements of a First Amendment retaliation claim are that 1) plaintiffs engaged in constitutionally protected conduct; 2) defendants' adverse action caused plaintiffs an injury that would "deter a person of ordinary firmness from continuing to engage in that conduct;" and 3) "the adverse action was motivated at least in part by the plaintiffs' protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The inquiry of "whether activity is 'protected' or an action is 'adverse'" is context-specific. *Thaddeus-X*, *supra*, 175 F.3d at 388.

First Amendment protected expression must "touch upon a matter of public concern." *Connick v. Meyers*, 461 U.S. 138, 149 (1983). This is satisfied if the speech can fairly be said to relate to "a matter of political, social, or other concern to the community." *Id.* at 146.

Plaintiffs assert they engaged in numerous conversations with the City officials in an attempt to resolve issue with building their home, which resulted in defendants chilling their right to petition the government. In essence, plaintiffs claim that their protected First Amendment activity was petitioning and speaking to municipal officials about the problems with their home construction, the City's selective enforcement of its ordinances, and the mistreatment of plaintiffs based on their ethnicity, national origin, or religion. They claim that, in response, defendants threatened to take enforcement action against plaintiffs if plaintiffs did not ensure the correction of the flood plain and entranceway problems.

In considering the threat to take enforcement action, the case *Volk v. Heydt*, 1997 WL 27100 (E.D. Pa. 1997), is instructive. In that case, a garage was constructed on plaintiffs' property by a contractor. The garage, however, was not in compliance with building codes; the plans had contained errors and the city should have denied the permit. The Volks contacted the city to request that the building codes be enforced against the contractor. The result was that the city sent letters notifying both the contractor and plaintiffs that they were in violation of building codes. Plaintiffs filed at § 1983 suit claiming that the city violated their equal protection rights by granting the permit, and that the city violated their First Amendment rights by retaliating against them, alleging that the enforcement activity took place as a result of their requests for enforcement of the code.

The court in *Volk*, in ruling on the motion to dismiss, determined that the plaintiffs' First Amendment retaliation claim was unfounded. It noted that plaintiffs did not allege that any enforcement proceedings were instituted, and concluded "the mere fact that the [city] sent these letters to the Plaintiffs without taking further action, is not sufficient to constitute an "adverse action" for purposes of a claim for retaliation." *Volk*, *supra*, 1997 WL 27100, at *8.

Plaintiffs have the burden of showing that they were engaged in protected activity, the defendants took adverse action against them that would deter a person of ordinary firmness from continuing to engage in that conduct, and plaintiffs' protected conduct, at least in part, motivated the adverse action. *See Thaddeus-X*, *supra*, 175 F.3d at 394; *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

Plaintiffs fail to meet this burden. Here, plaintiffs cannot show that their complaints to Alexander and others constituted comments on matters of public concern; the nature of the plaintiffs petition to the City was personal in nature. Plaintiffs also cannot assert a claim that the City's threats

to take enforcement action violated their First Amendment rights.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT

1. Defendants' motion to dismiss be, and the same is hereby granted as to plaintiffs' claims against the City of Perrysburg and defendants in their official capacity, and plaintiffs' First Amendment retaliation claim;

2. Defendants' motion to dismiss be, and the same hereby is granted as to the defendant Alexander and denied as to the defendants Tierney and Klag as to plaintiffs' equal protection and selective enforcement claims.

So ordered.

                                                    s/James G. Carr
                                                    James G. Carr
                                                    Chief Judge