IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Fadhil A. Hussein, M.D., et al,                                    Case No. 3:07CV1715

                    Plaintiffs

          v.                                                                ORDER

City of Perrysburg, et al,

                    Defendants

          This is a case about constitutional rights. Plaintiffs Fadhil A. Hussein, M.D., and Raya K.

Ahmed bring a 42 U.S.C. § 1983 claim against two Perrysburg, Ohio, employees, defendants Rick

Thielen and Roud C. Klag. Plaintiffs allege that Thielen and Klag acted in violation of the due

process and equal protection clauses of the Fourteenth Amendment in their enforcement of City

zoning ordinances.

          Jurisdiction arises under 28 U.S.C. §§ 1331 and 1367. Pending is defendants' motion for

summary judgment. [Doc. 64]. For the reasons that follow, I grant summary judgment as to

plaintiffs' equal protection claim. With regard to plaintiffs' due process claims, I grant summary

judgment in part and deny it in part.[1]

---
[1]

Also pending are defendants' motions to strike [Docs. 91, 95]. I deny both motions.

**Background**

In 2000, Hafner & Sugarman Enterprises [Hafner], a real estate developer and contractor, purchased the property currently known as Ironwood subdivision. Originally located in Perrysburg Township, the City annexed the property in March, 2002. Hafner subdivided the property into four lots and constructed an entryway off State Route 65, also known as River Road.

On October 2, 2002, Dr. Hussein entered into a Real Estate Purchase Contract to buy approximately eight acres of land, or two of Hafner's four lots. Dr. Hussein placed the General Warranty Deed in his wife Ahmed's name, although he  paid for the land. Both plaintiffs are Muslim. They were born in Iraq, and have become naturalized citizens of the United States.

On July 5, 2004, Dr. Hussein and Hafner entered into another contract, for Hafner to build a home for plaintiffs on their land. The City issued a building permit in Dr. Hussein's name. Before Hafner began construction, the City Inspector, defendant Klag, visited the Husseins' property to approve the water and sewer taps. Klag also approved a permit for a swimming pool. Hafner began construction in July, 2004.

Under City of Perrysburg Codified Ordinance [COP] § 1453.10(a), "[a] development permit shall be obtained before construction or development begins within any area of special flood hazard established in Section 1453.05." Although the Husseins' property was on a flood plain, Hafner continued its construction without a permit. In so doing, either Hafner, or Dr. Hussein, or both, filled in a drainage ditch and altered the course of drainage.[2] Thereafter, neighboring homeowners experienced more extensive flooding on their property than they had experienced previously.

---

[2] The parties dispute exactly who performed the most detrimental work; however, given that this is a motion for summary judgment, I view the facts in the light most favorable to Dr. Hussein.

Hafner also failed to comply with two other City requirements. It neither built a culvert under the driveway to prevent storm water from washing onto State Route 65, as required by COP § 1022.04, nor constructed a sidewalk fronting the Husseins' home, as required by COP § 1022.03(a).

On April 1, 2006, one of the Husseins' neighbors, David Kienzle, called the City Administrator, John Alexander, and notified him that several trucks were delivering and dumping dirt in the Ironwood subdivision. The same day, defendant Thielen, the City's Planning, Zoning and Economic Development Administrator, visited plaintiffs' property. There, he learned that a drainage ditch had been filled in and altered without a permit. Thielen orally directed Hafner to stop all construction activity. In a letter dated April 19, 2006, Thielen issued the same directive and attached a copy of the flood plain ordinance.

On June 28, 2006, Wood County issued a certificate of occupancy to the Husseins certifying that the house was habitable under the Wood County and Ohio State Building Codes, O.R.C. §§ 3781 and 3791.

The same day, Klag, at Thielen's direction, issued Hafner a stop work order under COP §§ 260.02, 1280.01, 1280.03, 1453.99 and O.R.C. § 3781.031. Dated June 28, 2006, this letter stated:

> You are hereby ordered to CEASE any and all work at your construction site located at 28291 West River Road in the City of Perrysburg, Ohio. You must contact our office immediately to resolve issues dealing with a recently constructed culvert and driveway, the filling of the adjacent flood plain and any other zoning and City of Perrysburg requirements including the installation of public sidewalks. Any violation of this STOP WORK ORDER will be subject to all legal action provided in the Codified Ordinances of Perrysburg, Ohio.

On July 5, 2006, Klag sent Hafner a letter stating that three code violations needed to be resolved: 1) a flood plain application and Chapter 1453 permit; 2) highway access and drainage authorization; and 3) installation of a sidewalk. The letter stated that "it is illegal to occupy this

house until all related issues are resolved and the Certificate of Occupancy issued." [Doc. 60, App. 17]. Klag sent a copy of this letter to Ahmed, the title holder to the property, and attached the stop work order.

The Husseins retained counsel. One of their attorneys, Richard E. Wolff, contacted Administrator Alexander to try to negotiate a way for the Husseins to lawfully occupy their home. Alexander proposed that if the Husseins acknowledged the existing stop work order, outstanding issues to be resolved and risks associated with the entranceway, the City would allow them to occupy their home without a City occupancy permit. A letter dated July 14, 2006, memorializes this conversation. Shortly thereafter, plaintiffs moved into their home.

Problems between the Husseins and the City arose again in October, 2006. Concerned about egress to and from his house during the Winter months, Dr. Hussein wanted to lay a temporary layer of asphalt on the drive. He hired contractor Rick Macek.

In light of the existing stop work order, the Husseins' representatives sought permission from the City to lay the asphalt. On October 2, 2006, Macek spoke to Mike Johnson, an employee in the City's Engineering Division. Although Johnson never expressly authorized construction, he opined that laying a temporary layer of asphalt was a "great" idea. [Doc. 64].

One of the Husseins' attorneys, Anastasia Hanson, spoke to Klag on October 6, 2006. According to Hanson, Klag authorized the Husseins to lay a thin layer of asphalt over the gravel drive to ensure safety during the Winter months.

On November 3, 2006, paving contractor Baird & Sons started to lay an eight to nine foot layer of thin asphalt. Dr. Hussein estimates that nearly half of the asphalt laid on his personal

4

property, while the rest covered the City's right-of-way. After observing this paving, Kienzle called to alert Thielen.

Thielen then directed Klag to go to the Husseins' property to inspect the activity and enforce the stop work order, if necessary. Klag arrived at the Husseins' property, along with two City police officers. Klag instructed the workers to "cease and desist." [Doc. 64].

In his affidavit, the paving contractor, Gene Baird, stated that Klag "told me that there was a stop work order on the job and that I had to stop work and remove the asphalt. He said if I did not remove the asphalt that I had put down that they would require me to go to court and get fined. He said that I would be under litigation." [Doc. 86, Ex. 2]. Baird and the other pavers removed the asphalt.

On November 6, 2006, Hanson contacted Klag in attempt to resolve this ongoing dispute. Klag informed Hanson that if she sent a written request documenting the Husseins' desire to install asphalt, then the work could go forward. Hanson drafted such request.

The City responded by stating that the Husseins could only install the temporary asphalt if they entered into a contract with the City to fix the other outstanding violations – namely, the common drive, entranceway, drainage and sidewalk. Because the Husseins believed that these deficiencies were Hafner's responsibilities, they chose not to enter into such an agreement.

Also occurring around this time, on October 23, 2006, and November 13, 2006, plaintiffs' neighbors held two meetings to address recent flooding. Although Thielen arranged for a room in the City offices, the neighbors held the meetings and invited the participants. The Husseins contend that no one alerted them to the meetings.

Thereafter, Dr. Hussein tried to resolve these issues by complaining to Administrator Alexander. After Alexander was unresponsive, Dr. Hussein visited the Mayor. As Dr. Hussein waited to meet with the Mayor, he overheard Klag state something to the effect that he would like to see the reaction when the "good doctor starts flapping his jaw." [Doc. 73].

On January 12, 2007, City Law Director Peter Gwyn sent a letter to the Husseins' and Hafner's counsel stating that work on the flood plain violated a City ordinance. The letter also stated that the City had issued a stop work order and would not issue the certificate of occupancy until the Husseins resolved entranceway issues. If, however, the parties were able to remediate the situation to the satisfaction of the City before May 15, 2007, the City would not take enforcement action.

In April, 2007, Hafner proposed that, if the Husseins would allow it to bring heavy equipment across their property, it would complete the sidewalk and entrance. Although the Husseins initially refused to give permission unless Hafner fixed the entranceway first, an agreement between them, Hafner and the City broke the impasse. The Husseins allowed Hafner to work on the flood plain, but insisted that if the sidewalk and entranceway were not fully completed by May 15, 2007, the City would take enforcement action against Hafner.

Hafner completed the flood plain work during April, 2007, and the City issued a certificate of occupancy. Hafner, however, did not fix the sidewalk and entranceway. The City granted Hafner an extension until May 31, 2007, which Hafner failed to meet. The City never instituted enforcement proceedings. The Husseins sued Hafner for fraud, breach of contract, breach of warranty and other claims in the Wood County, Ohio, Court of Common Pleas.

On June 11, 2007, the Husseins brought this § 1983 claim against the City of Perrysburg, as well as Alexander, Klag and Thielen in their individual and official capacities. In a February 28,

6

2008, order, I granted defendants' motion to dismiss plaintiffs' claims against the City and defendants in their official capacity. *Hussein v. City of Perrysburg*, 535 F.Supp.2d 862, 875 (N.D.Ohio 2008). I also dismissed plaintiffs' claim against Alexander in his individual capacity and plaintiffs' First Amendment retaliation claim. Remaining are due process and equal protection claims against Thielen and Klag in their individual capacity.

**Standard of Review**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id*. at 323. The burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Celotex, supra*, 477 U.S. at 324.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the non-moving party, all evidence will be

7

construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Celotex, supra*, 477 U.S. at 323.

## Discussion

Section 1983 provides a private cause of action against those who "under color of any statute, ordinance, regulation, custom, or usage of any State" deprive another of any "rights, privileges, or immunities secured by" federal law. In a § 1983 action, plaintiffs must prove: 1) defendants acted under color of state law; and 2) defendants' conduct deprived plaintiffs of rights or privileges protected by the laws or Constitution of the United States. *E.g., West v. Atkins*, 487 U.S. 42, 48 (1988).

Because it is undisputed that Thielen and Klag acted under color of law, my analysis focuses on whether they deprived the Husseins of any constitutional right – more specifically, I assess whether Thielen and Klag violated the equal protection clause and due process clause of the Fourteenth Amendment.

For the reasons discussed below, I conclude that a jury could find that Thielen and Klag deprived plaintiffs of their rights under the due process clause, but not under the equal protection clause.[3]

---

[3]

Defendants argue that because Dr. Hussein is not the titled property owner, he has no standing to bring this claim. I disagree. In Ohio, property rights extend past mere property owners, as leaseholders also have a recognized property right. *See Cox v. Drake*, 2007 WL 1804357, *4 (6th Cir.) (unpublished disposition). Dr. Hussein personally paid for the acquisition, construction and

## 1. Equal Protection Clause

The equal protection clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. An equal protection claim can be based on selective enforcement of neutral laws. "Selective enforcement claims are judged according to ordinary Equal Protection standards, which require a petitioner to show both a discriminatory purpose and a discriminatory effect." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

In the Sixth Circuit, courts apply a three-prong test to determine if defendants engaged in selective enforcement:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Id.* at 319 (quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)).

The Husseins allege that Klag and Thielen violated the equal protection clause by selectively enforcing City ordinances against them because of their race, religion and national origin.[4] For the following reasons, I disagree.

_____

maintenance of the land and residence in issue. His wife, the titleholder, has given him permission to live in their residence. As such, Dr. Hussein has at least the same rights as a leaseholder, and I will evaluate both Dr. Hussein's and Ahmed's property rights as one in the same.

[4]

In addition to their equal protection claim based on race, religion and national origin, the Husseins assert that they are a "class-of-one." As I explained in my previous order, plaintiffs did not explicitly plead this cause of action in their amended complaint. *See Hussein*, *supra*, 535 F.Supp.2d at 870, n.1. Plaintiffs also failed to allege sufficient facts in their complaint to state a "class-of-one" cause of action.

## A. Similarly Situated Individuals

"The basis of any equal protection claim is that the state has treated similarly-situated individuals differently." *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). "In the land-use context, timing is critical and, thus, can supply an important basis for differential treatment." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed.Appx. 826, 836 (6th Cir. 2009) (unpublished disposition).

The Husseins contend that they are similarly situated to Hafner, a Caucasian, as well as their neighbors – the Kinzles, Skeldons, Rawsons, Olsons, Harbaurs, Stryesymskis, Bihns and Myers, all Caucasians. Although I find the Husseins and Bihns to be similarly situated, I disagree with respect to Hafner and the remaining neighbors.

With regard to the neighbors, plaintiffs contend that despite the fact that none of the named neighbors have a sidewalk fronting their home, the defendants have not enforced the ordinance against them. The Husseins, however, overlook the fact that the City's sidewalk ordinance does not apply to the majority of their neighbors. As defendants explain, COP § 1022 requires owners of new homes in the City to install a sidewalk. This ordinance does not apply to homes constructed before the property became part of the City *via* annexation.

Thus, plaintiffs' comparison to the Kinzles, Skeldons and Rawsons is unavailing. Their homes are outside the scope of the ordinance because they were constructed before the City annexed their property. *See Rondigo, L.L.C. v. Casco Tp., Mich.*, 2009 WL 1362390, *7 (6th Cir.) (unpublished disposition) (finding parties not similarly situated where one was subject to a new ordinance while the other was exempt from the newly enacted standards).

10

The Olsons, Harbaurs and Stryesymskis likewise fall outside the scope of the sidewalk requirement. Despite living in close proximity to the Husseins, these neighbors live in Perrysburg Township, which does not have a sidewalk requirement.

Michael Myers, furthermore, is not similarly situated to the Husseins. The City did not require him to install a sidewalk because of a promise the Mayor pledged at a public pre-annexation meeting. The mayor stated that he would not pursue sidewalks in the Willowbend annexation because it was not conducive to the area.[5]

I do, however, find the Husseins to be similarly situated to Dr. Gerald and Deborah Bihn, because they are subject to the City's sidewalk ordinance. The Bihns' property was completed in March, 2006. Though subject to the sidewalk requirement, they did not install a sidewalk.

Early in 2006, through his role as City Inspector, Klag became aware that the Bihns' property did not comply with the sidewalk ordinance. On March 27, 2006, Klag sent written notification to the Bihns, reminding them of the need to install sidewalks and driveways, and requiring the action to be completed by May 15, 2006. Klag copied Thielen on the letter. Within several days of receiving the letter, Dr. Bihn called Klag and explained that his contractor had filed for bankruptcy, he had already paid for the sidewalk and the sidewalk was part of a pending lawsuit.

Due to these circumstances, the defendants delayed enforcement actions against the Bihns. The defendants contend that the Bihns and Husseins are not similarly situated because Hafner, the Husseins' contractor, was not under bankruptcy protection.

---

[5]

Because the City is no longer a party to this litigation, any promise made by the Mayor is not attributable to either of the individual defendants.

Although I am mindful of the fact that Dr. Bihn could not file an action against a contractor in bankruptcy proceedings, I do not find this to distinguish the Bihns' situation from that of the plaintiffs. As plaintiffs argue, they, too, have already paid for the sidewalk and their contractor has failed to install it. But instead of delaying the enforcement action, the defendants told the Husseins that as the owners of the house, the sidewalk was their responsibility. See COP § 1022.02 (d) (referring specifically to "owner" as "the owner, leaseholder, or agent thereof, holding title to any private property adjoining any street in the City").

The defendants also treated the Bihns and Husseins differently when first discovering that the homeowners violated the sidewalk ordinance. While the Bihns received a letter stating that they needed to comply with the ordinance, the Husseins received a letter stating that it was "illegal to occupy th[eir] house." [Doc. 60, App. 17].

Defendants stress that they are in the process of enforcing the sidewalk ordinance against the Bihns. In early 2008, defendants resumed discussions with Dr. Bihn about his property. On October 21, 2008, Klag sent Dr. Bihn a letter saying that the City expected him to install a sidewalk by June, 2009. On June 22, 2009, Klag sent another letter stating that if Dr. Bihn failed to comply with the sidewalk ordinance by August 14, 2009, then the City would install one and assign costs to the Bihns. Given these discrepancies, however, a reasonable jury could find that the currently scheduled enforcement action against the Bihns is a *post hoc* pretext to conceal the defendants' unequal treament of the plaintiffs.

In addition, the Husseins contend that they are similarly situated to Hafner. They argue that he had violated the City's flood plain ordinance without a response from the City. Plaintiffs, however, received a stop work order, even after having obtained a County occupancy permit.[6]

Hafner and plaintiffs are not comparable. Plaintiffs have failed to dispute defendants' contention that they were not aware of Hafner's violations until the neighbors complained about his hauling dirt on the premises. This led to the stop work order which applied to Hafner and plaintiffs alike.

Plaintiffs suggest that because the City Engineer knew that Hafner had brought dirt onto the property in November, 2005, the defendants had knowledge of Hafner's violation. Knowledge on behalf of one city employee cannot be imputed to the defendants. Further, even if the defendants knew about the dirt, such knowledge would not have necessarily alerted them to Hafner's violation, as in 2005, the Ironwood subdivision was still under construction.

I conclude, therefore, that plaintiffs met their burden of establishing that defendants treated them differently than similarly situated individuals only with regard to the Bihns.

## B. Discriminatory Purpose

To show that defendants acted with a discriminatory purpose, plaintiffs must proffer "evidence that an official chose to prosecute or engage in some other action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005).

---

[6]

I noted in my previous order that "Hafner's situation" was "comparable" because, according to the complaint. *Hussein*, *supra*, 535 F.Supp.2d at 871-72. This statement was in the context of a motion for judgment on the pleadings.

13

"[T]here is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; the standard is a demanding one." *Gardenhire*, *supra*, 205 F.3d at 319; *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir.1997) (noting that plaintiffs must produce "clear evidence" to rebut the "strong presumption" that state actors have properly discharged their duties).

Here, the Husseins assert that Thielen and Klag acted with a discriminatory intent, as demonstrated by the totality of the circumstances. *See Washington v. Davis*, 426 U.S. 229, 242 (1976) ("[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [practice] bears more heavily on one race than another."); *Ibarra v. Barrett*, 2007 WL 1191003, *5 (M.D. Tenn.).

As evidence of discriminatory animus, the Husseins point to Klag's alleged comment about the "good doctor [ ]flapping his jaw." [Doc. 73]. This comment, albeit unkind and inappropriate, does not suggest unlawful discriminatory animus. It makes no reference to nationality, ethnicity or religion.

The Husseins' contention that the defendants departed from their standard protocol to enforce City ordinances is equally tenuous. The Husseins point to the fact that the defendants have never used the police to enforce a zoning code violation. They also note that Thielen testified that the City typically provided violators with notice and a hearing, and Klag testified that he thought judicial action was required. Such departures, however, do not rise to the level of discriminatory animus.

Although City ordinances discuss certain actions requiring actions or proceedings, they do not state explicitly how defendants should act after learning of a violation of a work stop order. Given

14

the strong presumption that government officials enjoy, I do not find defendants' alleged departures from policy sufficient to overcome the presumption.

The Husseins' final contention that the defendants acted with a discriminatory purpose deals with the defendants' behavior in holding two meetings to discuss the Ironwood subdivision flooding and excluding them from participation in those meetings. Despite the evidence that Thielen played a minor role in arranging the meetings, the neighbors initiated the meetings and spread the word about them. The neighbors were, moreover, concerned about flooding on *their* property, which they appear to have attributed, at least in part, to the work done on Husseins' property.

The defendants' failure to ensure that the Husseins received notice about the meetings falls short of exhibiting discriminatory animus. *See Gardenhire*, *supra*, 205 F.3d at 320 (finding that defendant's "condescending glares" and a comment to "get out of town" fell short of constituting "clear evidence" of misbehavior to sustain a selective enforcement claim).

Additional support for this finding comes from Dr. Husseins' own testimony. Dr. Hussein testified that he believes that defendants discriminated against him based on his religion and national origin because he could not think of any other reason they would have done so. He also stated in his deposition that defendants' disparate treatment "wasn't on account of social status or income or the kind of home I built or how I live in my house, or my criminal record, it wasn't based on anything. After researching everything under the sun in trying to figure out why the City of Perrysburg treated me so poorly and differently, that's the only conclusion I could come up with." [Doc. 64].

Plaintiffs cannot infer discrimination simply because they know no other reason for defendants' wrongful conduct. *See Gardenhire*, *supra*, 205 F.3d at 320 (rejecting plaintiff's argument

15

that because he knew of no one reason for defendant's wrongful treatment, it inferred a racial motivation).[7]

Due to this determination, I have no need to assess whether the Husseins experienced a discriminatory effect, and plaintiffs' selective enforcement claim fails as a matter of law.[8]

### 2. Procedural Due Process

To establish a procedural due process claim under § 1983, plaintiffs must show that: 1) they have a protectable life, liberty or property interest; 2) the state deprived them of this interest; and 3) "the state did not afford them adequate procedural rights prior to" this deprivation. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999). "[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations omitted).

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interest that a person has already acquired in specific benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). Property interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an

---

[7]

Despite my holding, I do not credit the defendants' assertion that, because they had never met the plaintiffs, they lacked knowledge of their religion and national origin. In a post-911 world, I find this suggestion to be implausible. But that is immaterial, as plaintiffs cannot meet their burden of proof with regard to their equal protection claim even if a jury were to find that defendants were aware of plaintiffs' nationality and religion. Proof of animus-based acts, not mere awareness, is necessary to get to the jury.

[8]

It is unclear whether the Husseins also assert that the defendants violated the equal protection clause by demanding a City occupancy permit despite the City's general practice of relying exclusively on the County occupancy permit. To the extent that the Husseins do assert such a claim, it fails as a matter of law, as the Husseins have failed to show discriminatory animus.

independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*. at 577.

Under Ohio law, the right to "acquire, use, enjoy, and dispose of property" is "an original and fundamental right, existing anterior to the formation of the government itself." *City of Norwood v. Horney*, 110 Ohio St. 3d 353, 361-62 (2006).

The Husseins claim that defendants deprived them of their property interests without due process on two occasions, namely by: 1) the June 28, 2006 stop work order and the July 5, 2006 letter stating that it was illegal to live in their home; and 2) causing removal of the asphalt laid on their property without citation or an opportunity to be heard.

### A. Occupancy

Once Wood County issued its certificate of occupancy, the Husseins had a protectable interest. *See Chandler v. Village of Chagrin Falls,* 296 Fed.Appx. 463, 469 (6th Cir. 2008) ("This Court has held that the holder of a building or zoning permit has a constitutionally protected interest and is therefore entitled to proper proceedings prior to a final determination regarding revocation."); *Buckeye Community Hope Found. v. City of Cuyahoga Falls*, 263 F.3d 627, 642-43 (6th Cir. 2001), *rev'd on other ground*, *City of Cuyahoga Falls v. Buckeye Community Hope Found.*, 538 U.S. 188, 198 (2003).

The defendants deprived the Husseins of this interest in the name of City ordinance enforcement. Because the Husseins failed to complete construction of their house, however, the City had a lawful basis to withhold its own certificate of occupancy. *See Town of Castle Rock*, *Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."); *Triomphe Investors v. City of*

17

*Northwood*, 49 F.3d 198, 202 (6th Cir. 1995) (unpublished disposition) (finding that there is no legitimate expectation in a zoning permit or certificate of occupancy).

The Husseins' procedural due process claims fails as a matter of law, however, because they have failed to demonstrate that they were entitled to additional process.

When determining the requisite process due, courts apply a flexible "balancing test" varying based on the "particular situation demands." *Wilson Air Center, LLC v. F.A.A.*, 372 F.3d 807, 817 (6th Cir. 2004).

Courts consider: 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, *supra*, 424 U.S. at 335 (internal quotation marks omitted).

Here, the defendants provided the Husseins with notice, *via* the June 5, 2006, letter. They also provided an opportunity to be heard, by asking the Husseins to contact the City to resolve this dispute. In fact, the Husseins' counsel contacted the City and resolved the dispute, and the Husseins moved into their home in July, 2006.

### B. Asphalt on Driveway

The Husseins also contend that they have an interest in the asphalt which was partially installed on their drive and the adjacent City right-of-way on November 3, 2006, and the use and enjoyment of such drive.

18

The Husseins assert that they own the City's right-of-way, as the General Warranty Deed provides that Ahmed owns to the center of State Route 65. To the extent that the Husseins have a property interest in the City's right-of-way, *see Taylor v. Carpenter*, 45 Ohio St. 2d 137, 139 (1976), it does not extend to its paving such right-of-way with asphalt. Thus, Klag's instruction to remove the asphalt laid on State Route 65 did not affect plaintiffs' property interest.

It is undisputed, however, that some of the asphalt was on plaintiffs' property adjacent to the City's right-of-way. According to Dr. Hussein, almost half of the asphalt laid on their drive. He spent approximately $1,000 to pave the entire drive, and thus, about half of that was for the pavement on his driveway.

Klag's instruction to the paving contractors to remove the asphalt was not limited to the asphalt on State Route 65. It also included the asphalt placed on plaintiffs' property, as to which a fact finder could conclude the plaintiffs had a protectable property interest.

The Husseins, furthermore, had a property interest in the use and enjoyment of their driveway. *See Horney*, *supra*, 110 Ohio St. 3d at 361-62. Dr. Hussein sought to lay a thin piece of asphalt to have safe, or even merely comfortable ingress and egress from his property during the Winter months.

The defendants put a different spin on this interest, arguing that the Husseins lack a property interest in violating an existing stop work order. Although this is true, the Husseins have raised a genuine issue of material fact that the City authorized them to install the temporary asphalt layer.

According to the Husseins, Macek, their contractor, discussed the possibility of laying a thin layer of asphalt over their drive with Johnson, a City Engineer. Johnson stated that it was a good plan,

19

but did not explicitly authorize its construction. The parties dispute whether Johnson inferred his approval of this plan.

Whether Johnson approved Dr. Hussein's proposal is not determinative, however, because plaintiffs also claim that Klag himself authorized such construction. Hanson, one of the Husseins' attorneys, testified that she spoke to Klag on October 6, 2006, and he authorized the Husseins to install the temporary layer of asphalt. Defendants disagree: they argue that Klag never gave such authorization, but that even if he did, he lacked the authority to override an otherwise valid stop work order.

Because I must view all facts in favor of the nonmoving party, I must credit Hanson's testimony and find it sufficient to establish a genuine issue of material fact.

Next, a jury could find that whether Klag had actual authority was irrelevant because of his apparent authority to give such authorization. In his role of a City Inspector, per Thielen's direction, Klag had authored previous communications with the Husseins and been in communication with them. *See Eaton v. Continental General Ins. Co.*, 147 F. Supp. 2d 829, 834 (N.D. Ohio 2001) (finding apparent authority if: 1) the principal "held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority," and 2) "the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority").

I, therefore, conclude that the Husseins have established a triable issue as to whether they had a protected property interest in the use and enjoyment of their home, as would have been facilitated by the temporary improvement to their driveway pending resolution of their disputes with the City.

20

Defendants argue that, even if plaintiffs had a cognizable property interest in the asphalt once it was on their property, they cannot be liable for its removal. This is so, according to the defendants, because the paving contractor, not they, physically removed the asphalt.

I disagree: the Husseins have provided sufficient evidence illustrating that the paving contractors removed the asphalt on Klag's order. Klag ordered the pavers to "cease and desist." In his affidavit, Baird swore that Klag "told me that there was a stop work order on the job and that I had to stop work and remove the asphalt. He said if I did not remove the asphalt that I had put down that they would require me to go to court and get fined. He said that I would be under litigation." [Doc. 86, Ex. 2].

I conclude that a triable issue exists as to whether Klag, at Thielen's direction, deprived the Husseins' of their property rights by causing the removal of the asphalt from their property. The next question is whether the defendants provided the Husseins with adequate process.

Here, the Husseins did not receive any process, either before or after the deprivation. The Husseins claim that, at minimum, they should have received notice of the defendants' intentions, and an opportunity to be heard by a neutral decision-maker. A jury could agree.

The first factor in the *Mathews v. Eldridge* balancing test weighs in favor of the Husseins, as the "right to unrestricted use and enjoyment" of property" is a "valuable right[] of ownership." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 54 (1993).

The second factor weighs in the Husseins' favor as well. Because the defendants provided no notice, the risk of an erroneous deprivation became even greater. Ohio law provides procedures for enforcing stop work orders. *See* O.R.C. § 3781.03(E) (authorizing the City to declare any work done following a stop work order as a public nuisance). Such procedures do not, a jury could conclude,

21

encompass an on-the-spot order to a contractor immediately to remove an improvement, even one installed in violation of a stop work order.

Finally, providing notice and a hearing – or even an informal meeting – would not frustrate the government's interest.

Because the defendants failed to provide the Husseins with process before depriving them of the use and enjoyment of the asphalt drive, I conclude that a triable issue exists as to whether the Husseins received requisite due process.

### C. *De Minimus* Defense

The defendants assert that even if they deprived plaintiffs of an interest in their property, the deprivation was *de minimus*, and thus, did not require any sort of due process.

A constitutional analysis of what process is due is unnecessary in cases where any deprivation is *de minimus. Goss v. Lopez*, 419 U.S. 565, 576 (1975); *Crabtree v. City of Cookville*, 1989 WL 140172, *2 (6th Cir.) (rejecting doctor's argument that because defendant deprived him of a property interest, he was entitled to at least some minimal advance notice by finding his deprivation *de minimus*).

The majority of the judicial decisions describing a *de minimus* property deprivation are found in the education and public employment context. *See Goss*, *supra*, 419 U.S. at 576  (finding that a ten-day suspension was not *de minimus*, given the importance of education); *Laney v. Farley*, 501 F.3d 577, 584 (6th Cir. 2007) ("because such a suspension is a *de minimus* deprivation, it would not implicate due process requirements"); *Carter v. Western Reserve Psychiatric Habilitation*, 767 F.2d 270, 272 n.1 (6th Cir.1985) (finding that a two-day suspension without pay as part of routine discipline *de minimus* and thus not deserving of due process consideration).

22

I cannot conclude that the defendants' deprivation of either property interest was *de minimus* as a matter of law. The Husseins lost their right to occupy their residence for approximately nine days, a deprivation found not to be *de minimus* in the school context. *See Goss*, *supra*, 419 U.S. at 576. Given the fundamental importance of the right to property, a deprivation of a similar length of time  is not *de minimus* in this context as well.[9]

Plaintiffs also suffered a property deprivation with regard to the approximately four feet of asphalt and the future loss of the use and enjoyment in their drive. A jury could find the loss of a $500 improvement to the property, standing alone, to be *de minimus*, but the jurors could also conclude the loss of use and enjoyment of the improvement during the ensuing Winter months to be more than *de minimus* and compensable.

### 3. Substantive Due Process

The due process clause also has a substantive component. *See Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir.1988) ("Substantive due process .   .   . protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action.").

To state a claim of substantive due process in the zoning context, "a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008); *see Pearson v. City of Grand Blanc*, 961 F.2d 1211,

---

[9]

Nonetheless, for the reasons discussed above, such claim fails as a matter of law, as the defendants provided the Husseins with requisite process.

23

1217 (6th Cir. 1992) ("[C]itizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions.").

To prevail, the plaintiff must show "that there is no rational basis for the administrative decision." *Pearson*, *supra*, 961 F.2d at 1221. *See also Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003) (noting that the "interests protected by substantive due process are of course much narrower than those protected by procedural due process").

In arguing that Thielen and Klag violated their substantive due process rights, the Husseins claim that the defendants acted in an arbitrary, unreasonable and capricious manner in: 1) issuing the stop work order in June, 2006; and 2) summarily ripping up the asphalt on November 3, 2006.

As discussed with regard to the Husseins' procedural due process claims, the Husseins have constitutionally protected property rights in the use and enjoyment of both their residence and their asphalt drive. The question at issue, therefore, is whether Thielen and Klag deprived the Husseins of such interests through arbitrary and capricious action.

The defendants contend that their actions were neither arbitrary nor capricious, but rather, based on plaintiffs' admitted violations of the City's zoning ordinances. For the following reasons, I find only one of their claims cognizable – namely, by directing the pavers to remove the asphalt, the defendants violated plaintiffs' substantive due process rights.

First, the defendants had a reasonable basis to issue a stop work order. As stated above, under O.R.C. § 3781.031(A), municipalities that enforce Ohio's building codes have the authority to issue a "stop work order." Given Thielen's authority under COP § 260.02 and Klag's under COP § 1280.01, both

> may issue a stop work order whenever the person finds, after inspection, that the site preparations or structure to be constructed, or the installation of an industrialized unit,

24

or the use of an appliance, material, assemblage, or manufactured product does not comply with Chapters 3781. and 3791. of the Revised Code or the rules adopted pursuant to those chapters. The effect of such an order shall be limited to the matter specified therein.

O.R.C. § 3781.031(B)(1).

In arguing otherwise, the Husseins point to the defendants' deposition testimony which states that they were unaware of guidelines or standards for issuing, implementing or enforcing stop work orders. Despite this statement, issuing a stop work order was not wholly irrational given their roles as City Inspector and City Administrator. Their action does not rise to the level required to violate substantive due process. *See Pearson*, *supra*, 961 F.2d at 1211 (noting that "[a]n action of state or local government which "shocks the conscience" of the federal court, may violate substantive due process").

Next, the Husseins contend that the defendants' actions in enforcing the stop work order (i.e. instructing the pavers to "cease and desist") were arbitrary and capricious.

Here, a jury could conclude that defendants' actions were arbitrary. The stop work order stated that any violation will be "subject to all legal action provided in the Codified Ordinances of Perrysburg Ohio." [Doc. 60, App. 16]. The ordinances provide that violators of the zoning ordinances can be fined up to $100 a day, or, for a sidewalk violation, the City can install a sidewalk and require payment, or seek equitable relief from a court. COP § 1022; COP § 1453.99 ("Whoever violates or fails to comply with any of the provisions in this chapter, . . . is guilty of a minor misdemeanor and shall be fined not more than one hundred dollars ($100.00) for each offense.").

The City ordinances do not authorize anyone to go and require someone to cease, desist and remove installation or construction on their property. Because the ordinances do not contain such a provision, it would be improper to read one in. *See Liberty Savings Bank v. Kettering*, 101 Ohio

App.3d 446, 451-52 (Ohio Ct. App. 1995) (holding that courts should strictly construe ordinances and resolve all ambiguities against the City).

 All potentially relevant provisions in both the City and State ordinances require some sort of process – none allow immediate action. See COP § 1280.05 (stating that the City "may institute an appropriate *action or proceeding* to prevent, restrain or enjoin any threatened or continuing violation or to correct or abate any present violation thereof"); O.R.C. § 3781.031(C) (noting that upon issuance of a stop work order, recipients must "cease  .  .  .  until the appeal provided for in accordance with section 3781.19 of the Revised Code, and all appeals from the hearing have been completed, or the order issued has been released").

Thus, even if the defendants truly believed that the Husseins had violated the stop work order, their action in immediately ordering its removal was irrational in light of their various other options. Summary judgment is especially inappropriate on this issue given the outstanding factual dispute as to whether Klag authorized the Husseins to install the thin layer of asphalt in his October, 2006, conversation with Hanson. If Klag provided such authorization, the jury could find that the defendants' ensuing actions, on learning that paving was occurring, were capricious.

Thus, while the defendants did not act irrationally with regard to the June stop work order, the jury could find that they did so by ordering the asphalt on the plaintiffs' land removed without following authorized and customary enforcement procedures.

### 4. Qualified Immunity

The Husseins sue Thielen and Klag in their individual capacity, and as such, the defendants may be entitled to qualified immunity. A successful assertion of qualified immunity enables defendants in § 1983 cases to avoid standing trial or enduring the other burdens of litigation.

26

*Harrison v. Ash*, 539 F.3d 510, 514 (6th Cir. 2008). If defendants raise the defense of qualified immunity, plaintiffs then have the burden to show that the individual defendants are not entitled to that immunity. *Id.* at 311.

To determine whether to grant summary judgment on the basis of qualified immunity, the Sixth Circuit employs a multi-pronged approach. Courts examine: 1) whether, after viewing the facts in the light most favorable to the plaintiffs, the plaintiffs have shown that defendants' conduct violated plaintiffs' constitutional or statutory rights; and 2) whether those rights were clearly established at the time of the alleged violation. *See*, *e.g.*, *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 538-39 (6th Cir. 2008); *Curry ex rel. Curry v. Hensiner*, 513 F.3d 570, 576 (6th Cir. 2008).

A right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "If officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In defining the scope of the violation, it is not necessary for courts to have found the specific action in question unlawful; rather, "the contours of the right" must be sufficiently clear. *E.g.*, *Thomas v. Cohen*, 304 F.3d 563, 580 (6th Cir. 2002). However, "the inquiry over whether a constitutional right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006).

Based on the following, I find the two constitutional violations in issue to be clearly established such that Thielen and Klag are not entitled to qualified immunity.

27

With regard to the Husseins' procedural due process claim stemming from the loss of their use and enjoyment of their asphalt drive, I do not find defendants' defense of qualified immunity maintainable. The law is well-settled that one cannot, in the exercise of state authority, deprive someone of their property without due process of law. *See, e.g., Roth*, *supra*, 408 U.S. at 577; *Bell v. Burton*, 402 U.S. 535, 539 (1971).

The requirements for "notice and an opportunity to be heard," moreover, are "clearly established." *Gunasekera v. Irwin*, 551 F.3d 461, 471 (6th Cir. 2009). The defendants, as government employees, should have known that at least some process was due before depriving the Husseins of their property interest.

Any reasonable official would have known that he cannot cease construction or direct destruction of a homeowner's property without due process. Despite City ordinances noting different ways to resolve zoning violations, the defendants disregarded them and enforced the ordinances as they saw fit. *See Silberstein*, *supra*, 440 F.3d at 318 ("A reasonably competent public official is presumed to know the law governing his or her conduct.").

If, as the Husseins sufficiently asserted, Klag authorized the Husseins to install a layer of asphalt, it becomes even more clear that the defendants are not entitled to qualified immunity. Because a genuine issue of material fact exists as to this point, summary judgment on the defense of qualified immunity is inappropriate. *See Bell v. City of Miamisburg*, 1992 WL 1258527, *9 (S.D.Ohio) (finding that when there are "factual disputes about what occurred, summary judgment on the defense of qualified immunity is inappropriate" (citing *Brandenburg v. Cureton,* 882 F.2d 211 (6th Cir.1989)).

28

Defendants, furthermore, cannot enjoy qualified immunity to shield them from liability for violating the Husseins' rights to substantive due process. It is clearly established that government officials cannot, under the substantive due process clause, subject residents to irrational or arbitrary zoning decisions. *See Triomphe Investors v. City of Northwood*, 835 F.Supp. 1036, 1042 (N.D.Ohio 1993) ("plaintiffs had a clearly established right not to be subject to an arbitrary or an irrational zoning decision.") (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977)).

Thielen and Klag cannot, therefore, rely on the defense of qualified immunity to shield themselves from liabilities for any of the Husseins' remaining allegations of constitutional violations.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion for summary judgment [Doc. 64] be, granted in part and denied in part.

So ordered.


s/James G. Carr
James G. Carr
Chief Judge


29